UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

J.C. GIBSON PLASTERING CO., INC.,

                    Plaintiff,

v.                                         Case No. 3:07-cv-268-J-33TEM

XL SPECIALTY INSURANCE COMPANY, and
XL REINSURANCE AMERICA, INC.,

                    Defendant.
_____/

**ORDER**

This cause comes before the Court pursuant to Gibson's Dispositive Motion for Partial Summary Judgment as to Count I of the Complaint (Doc. # 5), filed on April 25, 2007. XL Specialty Insurance Company and XL Reinsurance America, Inc., (collectively referred to herein as "XL") jointly filed a response on May 9, 2007. (Doc. # 8). On July 31, 2007, though, Gibson filed an amended complaint dropping two counts. (Doc. # 20.) Gibson's only remaining count is a claim for payment under a surety bond issued by XL. (Doc. # 20.) Gibson's motion is addressed to the only remaining count. Gibson's motion would thus be fully dispositive of this case, but for the fact that XL filed a counterclaim on August 9, 2007, (Doc. # 21).[1] For the reasons that follow, Gibson's motion for partial summary judgment is due to be granted.

_____

[1]Gibson has filed a motion to strike XL's counterclaim. (Doc. # 22.) The Court addresses that motion in a separate order.

1

## I.   Background

This litigation arises out of Gibson's work as a subcontractor on a housing development project.   The Auchter Company was the general contractor.   XL as surety issued a payment bond insuring payment to subcontractors in the event Auchter failed to pay.   (See Doc. # 1-3.)   Gibson alleges that Auchter failed to pay amounts due, and Gibson is now suing XL on the bond to recover those amounts.

Paragraph 4 of the bond details the procedure a subcontractor must follow to make a claim under the bond:

> 4.   The Surety shall have no obligation to Claimants under this bond until:
>
> > 4.1   Claimants who are employed by or have a direct contract with the Contractor have given notice to the Surety (at the address described in Paragraph 12) and sent a copy, or notice thereof, to the Owner stating that a claim is being made under this Bond and, with substantial accuracy, the amount of the claim.

(Doc. # 1-3, at 2.)   Accordingly, the bond requires a subcontractor to send notice of its claim to the owner of the development as well as to the surety.   This notice must state the amount of the claim with substantial accuracy.

Once a subcontractor has satisfied the notice requirement, the bond requires XL promptly to determine and pay -- or arrange for payment of -- the undisputed amount of the claim:

> 6.   When the Claimant has satisfied the conditions of Paragraph 4, the Surety shall promptly and at the Surety's expense take the following actions:

> 6.1  Send an answer to the Claimant, with a copy to the Owner, within 45 days after receipt of the claim, stating the amounts that are undisputed and the basis for challenging any amounts that are disputed.
>
> 6.2  Pay or arrange for payment of any undisputed amounts.

(Doc. # 1-3, at 2.)

Gibson submitted its final billing to Auchter on January 9, 2007.  (Doc. # 5, at 2.)  Auchter did not pay, and Gibson sent XL a claim under the bond for $736,416.66.  (Doc. # 1-4.)  Gibson sent this claim on February 9, 2007, and sent copies to Auchter and the owner of the development.  (Doc. # 1-4.)  On February 12, 2007, Gibson sent XL and Auchter a fourteen-page letter detailing the factual and legal bases of Gibson's claim.  (Doc. # 1-8.)  This letter explained that Gibson had previously submitted all records supporting the amount of the claim to a named employee of Auchter. (Doc. # 1-8, at 14.)  XL wrote back on February 22, 2007, requesting copies of all cost records supporting the amount of Gibson's claim.  (Doc. # 8-3, at 26.)  XL's letter additionally advised that XL was contacting Auchter to get Auchter's position on the claim.  (Doc. 8-3, at 26; see also Doc. # 8, at 3.)  On March 20, 2007, Gibson sent XL the requested materials.  (See Doc. # 1-10.)  The next day, XL wrote Gibson acknowledging receipt of the materials.  (Doc. # 8-3, at 27.)

Gibson wrote XL on April 3, 2007, and explained Gibson's position that XL breached its "obligations under [Paragraph] 6 of

3

the Payment Bond by failing to make an appropriate response within 45 days of the receipt of Gibson's claim." (Doc. # 5-4, at 60.) XL responded promptly on April 4, 2007, that the forty-five-day time period under Paragraph 6 did not begin to run until XL received the cost records on March 21, 2007. (Doc. # 8-3, at 31.) XL again wrote to Gibson on April 5, 2007. (Doc. # 8-3, at 32.) In this letter, XL noted that it was apparent a "legitimate dispute exists on the . . . project." (Doc. # 8-3, at 32.) The letter continued, "XL . . . has not been . . . empowered to act as the judge, juror or arbiter as it relates to said dispute. It is not up to XL to determine which party is correct or incorrect as it relates to same." (Doc. # 8-3, at 32.) Accordingly, XL advised that Gibson would have to resolve the matter directly with Auchter. (Doc. # 8-3, at 32.)

Gibson filed this action on April 4, 2007. (Doc. # 1.) Gibson's complaint alleged three counts, but Gibson subsequently amended its complaint to eliminate two of these counts. (Doc. # 20.) Gibson's amended complaint now pleads only a claim for payment under the bond. (Doc. # 20.) In response to Gibson's amended complaint, XL brought a three-count counterclaim. (Doc. # 21.) In its first two counts, XL seeks to enforce Auchter's rights under Auchter's subcontract with Gibson. (Doc. # 21, at 8-10.) XL claims Gibson breached the subcontract. (Doc. # 21, at 8-10.) XL alleges it can enforce Auchter's rights for two reasons. First,

4

Auchter assigned its rights under the subcontract to XL.  (Doc. # 21, at 8.)  Second, XL can proceed under the doctrine of equitable subrogation.  (Doc. # 21, at 9.)  XL's third count is a claim for common law indemnity alleging that XL paid losses occasioned by Gibson's breach of the subcontract.  (Doc. # 21, at 10-11.)

Gibson's motion for partial summary judgment is addressed only to Gibson's claim against XL, and not to XL's counterclaim. Accordingly, this Order does not render judgment upon the whole case.  See Fed. R. Civ. P. 56(d).  Instead, further litigation is necessary to adjudicate XL's counterclaims.

## II.  The Parties' Arguments

The dispute raised by Gibson's motion for partial summary judgment is very simple.  Gibson argues that its February 9, 2007, notice complied with Paragraph 4 of the bond, thus triggering XL's obligations under Paragraph 6.  Gibson submits that XL failed to meet those obligations.  The remedy for that failure, Gibson argues, is that XL is barred from now challenging Gibson's claim.

On the other side, XL argues that Gibson's February 9 notice did not comply with Paragraph 4.  Instead, according to XL, Gibson did not comply with Paragraph 4 until it sent its cost records on March 20, 2007.  As a result, XL's obligations under Paragraph 6 only began when Gibson received the March 20, 2007, notice.[2]

---

[2]Presumably, XL would argue that Gibson's filing of this lawsuit relieved XL of its obligation to respond to the March 20 claim.  In other words, XL would not be required to respond to the

Alternatively, Gibson claims it substantially complied with the requirements of Paragraph 6 by making an adequate response only a few days late.  As a final alternative argument, XL maintains that Florida law does not prevent a surety from challenging a claim against a bond even where the surety has not complied with its obligation to respond to the claim.

## III. Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  A factual dispute alone is not enough to defeat a properly pleaded motion for summary judgment; only the existence of a <u>genuine</u> issue of <u>material</u> fact will preclude a grant of summary judgment.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48 (1986).

An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  <u>Mize v. Jefferson City Bd. of Educ.</u>, 93 F.3d 739, 742 (11th Cir. 1996) (citing <u>Hairston v. Gainesville Sun Publ'g Co.</u>, 9 F.3d 913, 918 (11th Cir. 1993)).  A fact is material if it may affect the outcome of the suit under the governing law.  <u>Allen v. Tyson Foods, Inc.</u>,

---

claim within forty-five days when Gibson turned its claim into a lawsuit before that period had run.

121 F.3d 642, 646 (11th Cir. 1997).  The moving party bears the initial burden of showing the court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial.  Hickson Corp. v. N. Crossarm Co., Inc., 357 F.3d 1256, 1260 (11th Cir. 2004) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).  "When a moving party has discharged its burden, the non-moving party must then 'go beyond the pleadings,' and by its own affidavits, or by 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial."  Jeffery v. Sarasota White Sox, Inc., 64 F.3d 590, 593-94 (11th Cir. 1995) (citing Celotex, 477 U.S. at 324).

If there is a conflict between the parties' allegations or evidence, the non-moving party's evidence is presumed to be true and all reasonable inferences must be drawn in the non-moving party's favor.  Shotz v. City of Plantation, Fla., 344 F.3d 1161, 1164 (11th Cir. 2003).  "If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, the court should not grant summary judgment."  Samples ex rel. Samples v. City of Atlanta, 846 F.2d 1328, 1330 (11th Cir. 1988) (citing Augusta Iron & Steel Works, Inc. v. Employers Ins. of Wausau, 835 F.2d 855, 856 (11th Cir. 1988)).  However, if the non-movant's response consists of nothing "more than a repetition of his

conclusional allegations," summary judgment is not only proper, but required. <u>Morris v. Ross</u>, 663 F.2d 1032, 1034 (11th Cir. 1981), <u>cert. denied</u>, 456 U.S. 1010 (1982).

## IV. Discussion

The facts upon which Gibson's motion relies are undisputed, and the only questions necessary to resolve this motion are legal questions. There is no dispute as to the timing or content of the parties' communications.[3]   It is only the legal effect of those communications that is disputed.

There are two legal questions for the Court to resolve. First, the Court must decide whether XL complied with Paragraph 6 of the bond.  Because the Court determines that XL did not comply,

---

[3]XL argues that "there is a genuine issue of fact as to whether Gibson's Notice of Non-payment and/or Gibson's February 12, 2007[,] letter provided [XL] with proper notice under Paragraph 4 of the Bond." (Doc. # 8, at 9.)  The "proper notice" to which XL apparently refers is "enough information to verify the legitimacy of Gibson's claim" (Doc. # 8, at 9).  Perhaps there is a genuine question as to this fact, but that does not require the Court to deny summary judgment.  Only genuine questions of <u>material</u> fact require the denial of summary judgment.  Because the Court concludes that Paragraph 4 does not require a claimant to provide enough information to verify the legitimacy of a claim, <u>infra</u>, it is immaterial whether Gibson's February 9 and February 12 letters provided such information.

XL also argues that there is a genuine issue of material fact as to whether letters written in response to Gibson's claim constitute a proper response. (Doc. # 8, at 11–12.)  This is not a question of fact; it is a question of the legal meaning of known historical facts.  The timing and content of the letters is not in dispute.  The only dispute is whether the letters were sufficient to meet XL's obligations under Paragraph 6.  This is a question of law that can be answered on summary judgment.

the Court must then decide whether that default prevents XL from disputing Gibson's claim under the bond.

### A.    XL Failed to Comply with Paragraph 6

A surety's obligations under Paragraph 6 are not triggered until a claimant complies with Paragraph 4.  Paragraph 6 requires the surety to take action only "[w]hen the Claimant has satisfied the conditions of Paragraph 4." (Doc. # 1-3, at 2.)  Consequently, XL could not have breached its obligations under Paragraph 6, unless Gibson complied with Paragraph 4.

Gibson asserts that it complied with Paragraph 4 when it sent its February 9, 2007, notice of non-payment.  (Doc. # 5, at 3, 4, 8.)  XL disagrees, positing that "a claimant does not satisfy its obligation to properly notify a surety of its claim, as required by paragraph 4 of the Bond, until the claimant submits a Proof of Loss and/or other documents which provide sufficient details to substantiate the claim." (Doc. # 8, at 6 (footnote omitted).)  XL cites several cases for this proposition, but none of them decided the matter.

XL cites <u>First National Bank v. Fidelity & Casualty Co.</u>, 634 F.2d 1000 (5th Cir. Jan. 23, 1981) for the proposition that "[a] Proof of Loss is the mechanism by which an insured asserts a claim against a bond." (Doc. # 8, at 6 n.1.)  <u>First National</u> decidedly does not support XL's position that Gibson was required to submit a "proof of loss."  Instead, it supports the far different position

9

that a proof of loss is the mechanism by which an insured asserts a claim against a bond whose provisions require the submission of a proof of loss.   The Fifth Circuit explained that a provision of the bond at issue in First National required claimants to file an "affirmative proof of loss with full particulars in writing, including dates and items of loss, duly sworn to." First Nat'l Bank v. Fidelity & Cas. Co., 634 F.2d at 1005.   Additionally, applying Texas law, the court determined that the claimant needed only substantially to comply with that requirement.   Id.   Though the claimant had not filed a formal proof of loss, the court concluded that the claimant had substantially complied and therefore discharged its obligation. Id. at 1007.   Thus, First National goes no farther than the uncontroversial statement that a claimant must submit a proof of loss when a provision in the bond requires it and nothing less will constitute substantial compliance under the circumstances.

There is no provision in XL's bond requiring claimants to submit a proof of loss.   Rather, the requirements for making a claim are clearly set forth in Paragraph 4.   Far from supporting the proposition that Gibson was required to file a proof of loss, then, First National would lend support to the proposition that Gibson could discharge its obligations by substantially meeting the requirements of Paragraph 4.

XL also cites National Union Fire Insurance Co. v. Wadsworth

10

<u>Golf Construction Co.</u>, 863 A.2d 347 (Md. Ct. Spec. App. 2004).  The bond in <u>Wadsworth</u> contained provisions identical to Paragraph 4 and Paragraph 6 in XL's bond.  <u>Compare</u> <u>Wadsworth</u>, 863 A.2d at 349–50 <u>with</u> (Doc. # 1-3, at 2).  The claimant wrote the sureties seeking to recover under the bond.  The sureties responded with a request that the claimant complete a proof of claim form, which the sureties enclosed with their response.  <u>Wadsworth</u>, 863 A.2d at 350. The claimant completed the form and returned it to the sureties, but the sureties never answered the claim as required by Paragraph 6.  <u>Id.</u> at 351.  The Maryland court suggested that the forty-five-day response period began running when the claimant submitted the completed proof of claim form.  <u>See</u> <u>id.</u> at 355.  Nevertheless, the court did not reach the issue of when precisely the response period began.  That question was not presented because the surety failed to timely respond in either case, whether the response period began with the initial notice of the claim or with submission of the proof of claim form.  <u>See</u> <u>id.</u> at 350–51 (stating claimant sent original notice of claim on March 23, 2002, claimant submitted proof of claim form on May 3, 2002, and surety had not responded by the time complaint was filed on November 6, 2002).  As a result, <u>Wadsworth</u> does not support the proposition that a claimant can make a claim against a bond only by submitting a proof of loss or sufficient information to enable the surety to substantiate the claim.

The other two cases cited by XL suffer from similar problems. In _Casey Industrial, Inc. v. Seaboard Surety Co._, the court examined the question of whether a surety waives defenses not raised in the surety's response to a claim. _Casey Industrial_, No. 1:06-cv-249, 2006 WL 2850652, at *3-5 (E.D. Va. Oct. 2, 2006). The court held that certain defenses were waived and certain defenses were not waived, _id._ at *4, but the court never addressed the manner in which a claimant must submit a claim. In _Southern Win-Dor, Inc. v. RLI Insurance Co._, the dissent suggested that a claim was not properly made until the claimant executed a proof of claim form. 925 So. 2d 884, 890 (Miss. Ct. App. 2005) (Griffis, J., concurring in part and dissenting in part). Again, though, the question was not before the court. In _Southern Win-Dor_, the question was whether the surety should be equitably estopped from raising the statute of limitations as a defense to the claimant's claim. _Id._ at 886 (majority op.). To answer that question, the Court had merely to decide whether the surety's response to the claim had wrongfully lured the claimant into allowing the statute of limitations to run. _Id._ at 887. The majority determined the surety had not wrongfully induced the claimant to sleep on its rights, _id._ at 887, and the dissent disagreed, _id._ at 892 (Griffis, J., dissenting). Both the majority and the dissent thus examined the content of the surety's response, but neither opinion had occasion to question the timeliness of that response.

Consequently, neither opinion addressed the question of when the claimant started the response period by filing a proper notice. Accordingly, it is clear that none of the cases XL cites stands for the proposition that a claim against a bond can be made only by submitting a proof of loss or evidence supporting the claim.

Instead, under Florida law,[4] a claimant's obligations in reporting a claim are governed by the language of the bond. <u>See Prof'l Plastering & Stucco, Inc. v. Bridgeport-Strasberg Joint Venture</u>, 940 So. 2d 444, 452 n.3 (Fla. 5th DCA 2006) (Torpy, J., concurring in part and dissenting in part) ("If the bond is a common law bond[5] . . . , then compliance with unambiguous notice provisions contained therein is required as a matter of contract law."). This bond language must be interpreted against the surety. Florida law treats surety contracts as analogous to insurance contracts, and therefore requires that they "be strictly construed

---

[4]Because this is a diversity action, the Court must apply Florida law. <u>Three Palms Pointe, Inc. v. State Farm Fire & Cas. Co.</u>, 362 F.3d 1317, 1318 (11th Cir. 2004).

[5]There are two types of construction payment bonds under Florida law, common law bonds and statutory bonds. So-called statutory payment bonds must comply with the requirements of section 713.23, Florida Statutes. Such bonds protect an owner from construction liens by subcontractors. The requirements for making a claim against a statutory bond are set by statute. Neither XL nor Gibson asserts that the bond at issue in this case is a statutory bond, even though the bond was stamped with language purporting to incorporate by reference the provisions of section 713.23 (Doc. # 1-3, at 1, 3), and even though the bond contained language requiring that the bond be construed as a statutory bond in certain circumstances (Doc. # 1-3, at 2-3). Accordingly, the Court treats the bond as a common law bond.

against the surety and in favor of the obligee." <u>Gulf Power Co. v.
Ins. Co. of N. Am.</u>, 445 So. 2d 1141, 1142 (Fla. 1st DCA 1984);
<u>accord</u> <u>Travelers Indem. Co. v. Hous. Auth.</u>, 256 So. 2d 230, 234
(Fla. 3d DCA 1974).

In this case, the language in Paragraph 4 of XL's bond simply
requires notice of a claim.  This notice must state that a claim is
being made under the bond, and it must state the amount of the
claim with substantial accuracy.  The notice must be sent to both
the surety and the owner.  Contrary to XL's arguments, there is no
language in Paragraph 4 that required evidentiary support for the
claim.  When Paragraph 4 is interpreted against XL, it is
abundantly clear that Gibson's February 9, 2007, notice of
nonpayment satisfied Gibson's obligations under Paragraph 4.[6]
Gibson's notice stated that a "claim is hereby made" under the
bond, and it stated the amount of the claim down to the penny.
(Doc. # 1-4, at 1.)  Moreover, the notice reflects that it was sent
by certified mail to XL and to the owner.  (Doc. # 1-4, at 1.)
That the notice did not contain enough information for XL to verify
the claim is immaterial because Paragraph 4 did not require notices
to contain such information.

Thus, XL had forty-five days from its receipt of Gibson's

---

[6]If XL's bond were a statutory bond, Gibson's February 9,
2007, notice of nonpayment would be sufficient notice.  Section
713.23, Florida Statutes, provides the form in which notice must be
given.  Fla. Stat. § 713.23(d).  Gibson's notice was in this form.

14

February 9 notice of nonpayment to make a response under Paragraph
6.  A certified mail receipt attached to Gibson's complaint shows
that XL received this notice by February 16, 2007.[7]  (Doc. # 1-7.)
As a result, XL had until April 2, 2007 -- forty-five days after
February 16 -- to comply with Paragraph 6.  Before April 2, 2007,
XL was required to "[s]end an answer to [Gibson] . . . stating the
amounts that are undisputed and the basis for challenging any
amounts that are disputed." (Doc. # 1-3, at 2.)  XL did not send
such an answer to Gibson by April 2.

XL argues that it complied with Paragraph 6, but this argument
lacks merit.  XL admits that it only wrote to Gibson twice before
April 2, 2007.  (See Doc. # 8, at 11.)  In its first letter, dated
February 22, 2007, XL simply acknowledged Gibson's claim and
requested that Gibson submit evidentiary material in support.
(Doc. # 1-9, at 1.)  XL's letter also stated that XL intended to
contact Auchter for its position on Gibson's claim.  (Doc. # 1-9,
at 1.)  This letter most certainly did not "stat[e] the amounts
that are undisputed and the basis for challenging any amounts that

_____

[7]Gibson's counsel affies that the attached certified mail
receipt is a true and correct copy of the certified mail receipt
for the February 9 notice of nonpayment.  With its affidavit and
its attached certified mail receipt, Gibson has shown that there is
no genuine issue of when XL received the February 9 notice.  Thus,
the burden shifted to XL to designate specific facts showing that
there is a genuine dispute as to this fact.  XL neither admits nor
disputes that it received the notice on February 16, 2007.  (See
Doc. # 8, at 3.)  Consequently, there is no genuine question as to
when XL received the notice of nonpayment.

are disputed," as required by Paragraph 6.  XL's second letter was dated March 21, 2007.  (Doc. # 1-11.)  This letter acknowledged that Gibson provided evidentiary support for its claim in a letter of March 20, 2007.  (Doc. # 1-11.)  XL's letter next advised that its author would handle Gibson's claim on behalf of XL.  (Doc. # 1-11.)  Finally, the letter explained, "We are referring your letter to [Auchter] with the request that they review it and provide us with an indication of their position relative to your claim.  You can expect to hear from us further after we have conferred with [Auchter]."  (Doc. # 1-11.)  XL's second letter also failed to "stat[e] the amounts that are undisputed and the basis for challenging any amounts that are disputed," as required by Paragraph 6.

XL further claims that a letter sent by Auchter's counsel on March 30, 2007, satisfied XL's obligations under Paragraph 6.  This argument strains credulity because XL was not even the source of this communication.  Even if a letter from a general contractor's counsel could satisfy a surety's obligation under Paragraph 6 to answer a subcontractor's claim, though, this letter was insufficient.  While the letter did provide some justification for challenging portions of Gibson's claim, the letter did not state the amounts that are undisputed, as required by Paragraph 6.  (Doc. # 8-3, at 28-30.)

XL submits that there is a genuine question of fact as to

whether these communications were proper responses to Gibson's claim.  (Doc. # 8, at 11-12.)  XL does not explain precisely what facts are in question.  There is no dispute as to the contents or timing of any of these three letters.  Instead, the only dispute is a legal one over the effect of the letters.  This is not a dispute that must be taken to a jury.  The Court can resolve this legal question on summary judgment.

Addressing the legal question, XL cites an unpublished Massachusetts Superior Court decision for the proposition that XL could fulfill its obligations under Paragraph 6 even without "stating the amounts that are undisputed and the basis for challenging any amounts that are disputed."  In <u>Methuen Construction Co. v. Austin Co.</u>, the subcontractor lodged a claim against the surety under a bond.  No. 04-1207-G, slip op. at 2 (Mass. Sup. Ct. Sept. 1, 2006) (filed on the docket in this case as Doc. # 8-4).  Just over a month later, the surety acknowledged the claim and requested that the subcontractor complete an "Affidavit of Claim."  <u>Id.</u>  The court determined that this request was "an indication that [the surety] had not accepted and was disputing [the subcontractor's] claim . . . ."  <u>Id.</u> at 4.  As such, the court held, the surety had discharged its obligation to answer the claim within forty-five days.  <u>Id.</u>  The court reasoned that, in the context of large construction contracts, it would be "nearly impossible" for a surety to complete its investigation of a claim

17

and provide an answer within forty-five days.  Id.

This Court is unpersuaded by the Massachusetts court's reasoning.  The basis of the Methuen decision is not clear, but it appears the court drew from the contract doctrine of impracticability to find that the surety had discharged its obligations.[8]  The Restatement (Second) of Contracts summarizes that doctrine:

> Where, after a contract is made, a party's performance is made impracticable without his fault by the occurrence of an event the non-occurrence of which was a basic assumption on which the contract was made, his duty to render that performance is discharged, unless the language or the circumstances indicate the contrary.

Rest. (2d) of Contracts § 261; see also Leon County v. Gluesenkamp, 873 So. 2d 460, 463 (Fla. 1st DCA 2004) (applying the impracticability doctrine as stated in § 261).  The court seemingly determined that the necessity of a lengthy investigation was an event the non-occurrence of which was a basic assumption on which the surety contract was made.

That determination was unwarranted.  The Massachusetts court

---

[8]In Casey Industrial v. Seaboard Surety Co., the U.S. District Court for the Eastern District of Virginia determined that the Methuen decision "suggests that the Court should not follow the plain language of the [surety] contract, but should make judgments on its own as to the reasonable time frame for disputing a claim in 'complex construction cases.'"  Casey Indus., 2006 U.S. Dist. LEXIS 78416, at *11 (E.D. Va. Oct. 25, 2006).  This Court is hesitant to suppose the Methuen court simply substituted its own preferred terms for the bond terms the parties in fact agreed to.  For that reason, this Court assumes the Methuen court must have looked to some established legal doctrine before disregarding the language of the bond.

realized that a lengthy investigation would be required in most cases where the construction contract is large, complex, and involves millions of dollars. The court did not explain why the surety failed to realize that when it obligated itself to answer claims within forty-five days. If lengthy investigations follow naturally from large construction contracts, the necessity of such an investigation cannot be an event the non-occurrence of which is a basic assumption on which the surety contract is made. If it is clear that large construction projects require lengthy investigations, a surety cannot obligate itself promptly to answer claims on such projects and then complain that the size of the project renders a prompt answer impracticable. The <u>Methuen</u> court's rationale thus suggests that sureties on large construction projects should write longer response periods into their bonds. The decision, though, does not persuade this Court that XL should be relieved of its obligations under Paragraph 6.

In any case, XL does not press an argument under the doctrine of impracticability. Instead, it argues that it met its obligations because its letters (and the letter from Auchter's counsel) indicated that XL was disputing Gibson's claim. But Paragraph 6 obligated XL to "stat[e] the amounts that are undisputed and the basis for challenging any amounts that are disputed." This obligation cannot be discharged by communications hinting that a claim is being disputed. Because XL failed to

19

provide an answer "stating the amounts that are undisputed and the basis for challenging any amounts that are disputed," though, XL failed to comply with Paragraph 6.

Finally, XL relies on its letter to Gibson dated April 5, 2007.  XL argues that this letter was an answer to Gibson's claim, and that XL substantially complied with the requirements of Paragraph 6 by sending this letter just forty-eight days after XL received the claim.  (Doc. # 8, at 17.)  In this case, forty-eight days may as well have been a hundred years.  Under Florida law, bond language must "be strictly construed against the surety and in favor of the obligee." Gulf Power Co. v. Ins. Co. of N. Am., 445 So. 2d 1141, 1142 (Fla. 1st DCA 1984); accord Travelers Indem. Co. v. Hous. Auth., 256 So. 2d 230, 234 (Fla. 3d DCA 1974).  Under such a construction, the forty-five-day period set forth in Paragraph 6 means forty-five days.  XL could not comply with Paragraph 6 by answering within forty-eight days.[9]

### B.    XL's Failure to Answer Gibson's Claim, as Required by the Bond, Operates as a Waiver of XL's Right to Challenge Gibson's Claim Now

Gibson argues that XL's failure timely to answer Gibson's claims operated as a waiver of defenses XL may have had.  (Doc. # 5, at 9-10.)  In support, Gibson cites three cases from other

_____

[9]The Court by no means suggests that XL's April 5 letter was a proper answer to Gibson's claim.  The letter offered some basis for disputing "a large portion of the claim," but it did not state the amount of the claim that was undisputed.  (Doc. # 8-3, at 32.)

jurisdictions.   In <u>National Union Fire Insurance Co. v. Bramble</u>, the Maryland Court of Appeals addressed bond language identical to Paragraph 6 in XL's bond.  879 A.2d 101, 110 (Md. 2005).  The court concluded that a surety's failure to answer a bond claim within forty-five days as required by Paragraph 6 renders the entirety of the claim undisputed.  <u>Id.</u> at 111.

The court considered three factors that justified this conclusion.  First, the court examined the language of Paragraph 6. Paragraph 6 requires a surety merely to state portions of a claim that are undisputed, but it requires a surety to state the basis for challenging any disputed portion of a claim.  This means that a surety must shoulder a heavier burden to dispute a claim than to allow a claim.  It would thus be at odds with the requirements of Paragraph 6 to permit a surety to dispute a claim while bearing a lighter burden than required for undisputed claims.  The court explained:

> [Paragraph 6] places a greater burden on the sureties
> with respect to those amounts they wish to challenge as
> compared to those parts of the claim that are undisputed,
> the latter of which the sureties must only list.
> Therefore, it would not be consistent with the plain
> meaning of the provisions of Paragraph 6 to interpret it
> to permit the sureties to dispute a claim in its entirety
> through inaction.

<u>Id.</u> at 110.  The court found that the forty-five-day time requirement of Paragraph 6 would be rendered "essentially nugatory" if sureties were allowed later to dispute claims that had not been properly answered.  <u>Id.</u>

The court next looked to the purpose of Paragraph 6, which "insure[s] that subcontractors and sub-subcontractors are not forced to absorb the risk of non-payment over a protracted period by the contractor and the owner, through no fault of their own." Id.  The court determined that this purpose is served by a rule requiring the surety either to pay the claim in full or to answer the claim as required by Paragraph 6.  Id.

Finally, the court took note that Maryland courts construe surety contracts against compensated sureties and in favor of bond beneficiaries.  Id. at 111.  The court's holding comported with that practice.

The second case Gibson cited, National Union Fire Insurance Co. v. Wadsworth Golf Construction Co., held that Paragraph 6 "provides the surety 45 days to dispute a subcontractor's claim for payment and, if the surety does not answer within that time period, the surety waives its right thereafter to dispute the claim." 863 A.2d 347, 357 (Md. Ct. Spec. App. 2004).  Maryland's high court affirmed this holding in Bramble.  879 A.2d at 110.

Gibson's third case is Casey Industrial v. Seaboard Surety Co., No. 1:06-cv-249, 2006 WL 2850652 (E.D. Va. Oct. 2, 2006).  In Casey Industrial, the U.S. District Court for the Eastern District of Virginia found Maryland's Bramble decision persuasive.  Casey Indus., 2006 WL 2850652, at *4.  Applying a bond provision identical to Paragraph 6, the court determined that the surety was

barred from disputing the claim except as stated in the surety's timely response to the claim.  Id.  Thus, the surety was limited to those bases for challenging the claim stated in the surety's response to the claim.  Id.

XL argues the Court should not follow these cases.  Instead, XL maintains, "Florida Courts hold that a party to a contract does not waive its benefits under the contract merely because that party fails to comply with a requirement to provide notice, unless the other party to the contract is prejudiced." (Doc. # 8, at 15.)  In support, XL cites Walker & Co. General Contractors, Inc. v. Transcontinental Insurance Co., No. 6:05-cv-1745, 2007 WL 569855 (M.D. Fla. Feb. 20, 2007).  Walker & Co. provides little reason for the Court to reject the Bramble line of cases, though.  In Walker & Co., the Middle District of Florida explained that an insured does not waive insurance benefits simply by failing promptly to notify the insurer of a loss as required by the policy.  2007 WL 569855, at *4.  Instead, such a failure will only operate as a waiver where it has prejudiced the insurer.  Id.  In essence, Walker & Co. explained that a delay will result in waiver only where the delay has caused harm.  The harm in question is harm to the insurer's ability to investigate and defend against claims. See id.; see also Tiedke v. Fidelity & Cas. Co., 222 So. 2d 206, 209 (Fla. 1969); Rowland H. Long, The Law of Liability Insurance § 13.02 (Matthew Bender 2007).  In the case at bar, however, the

delay itself is the harm.  See Bramble, 879 A.2d at 111.  Paragraph 6 exists to prevent claimants from suffering extensive delays in payment of their claims.  Id.  Accordingly, the rule stated in Walker & Co. does not control this case.

This Court finds the Bramble line of cases persuasive.  In this diversity case, the Court must apply Florida law.  Three Palms Pointe, Inc. v. State Farm Fire & Cas. Co., 362 F.3d 1317, 1318 (11th Cir. 2004).  In the absence of Florida authorities, the Court "must decide the case the way it appears the [Florida Supreme Court] would."  Id.  Neither Gibson nor XL has cited any Florida case on this particular issue, and the Court's own research has not revealed any such case.  The few authorities to have addressed this question are in agreement, however.  Accordingly, the Court is of the opinion that the Florida Supreme Court would follow the Bramble line of cases.

XL seems to argue for an exception to the Bramble rule where the surety's failure to make a timely answer was caused by the claimant's failure to cooperate in the surety's investigation.  XL suggests it did not answer Gibson's claim within forty-five days because Gibson delayed sending materials in support of its claim.  The Court need not reach the question of an exception to the Bramble rule, however, because Gibson's delay in sending the materials did not cause XL's failure to comply with Paragraph 6.  In its letter of February 12, 2007, Gibson notified XL that it had

24

previously sent the materials to a named individual at Auchter. (Doc. # 1-8, at 14.)  As such, it is clear that Gibson did not frustrate XL's investigation by withholding necessary materials. Rather, Gibson promptly apprised XL that the materials were in the possession of XL's principal.

### C.   Attorney's Fees

In its motion, Gibson requests an award of attorney's fees under section 627.428, Florida Statutes.  Section 627.428 mandates an award of reasonable attorney's fees for an insurance beneficiary who prevails against an insurer in a suit to enforce insurance benefits.  Under section 627.756, Florida Statutes, the provisions of section 627.428 apply to lawsuits by subcontractors against sureties.  Thus, it appears certain Gibson will be entitled to an award of reasonable attorney's fees upon entry of judgment. However, the Court has not yet rendered judgment in this case.  For that reason, it would be premature to award attorney's fees at this time.  See State Farm Mut. Auto. Ins. Co. v. Cedolia, 571 So. 2d 1386, 1387 (Fla. 4th DCA 1990).  Should it so choose, Gibson is free to file a proper motion for attorney's fees at the appropriate time.

## V.   Conclusion

XL failed to comply with its obligations under Paragraph 6 of the bond.  As such, XL waived its right to dispute Gibson's claim, and Gibson's motion for partial summary judgment must be granted.

The Court cannot enter judgment at this time, however, because XL's counterclaim is still pending.  Further litigation is necessary to adjudicate XL's counterclaim.

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED:**

1.    Gibson's Dispositive Motion for Partial Summary Judgment as to Count I of the Complaint (Doc. # 5) is **GRANTED.**   XL has waived its right to contest Gibson's claim.

2.    Further proceedings shall be conducted as necessary to adjudicate XL's counterclaim.

**DONE** and **ORDERED** in Chambers in Jacksonville, Florida, this 8th day of October 2007.


VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE


Copies: All Counsel of Record