UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

J.C. GIBSON PLASTERING CO., INC.,

               Plaintiff,

v.                                Case No. 3:07-cv-268-J-33TEM

XL SPECIALTY INSURANCE COMPANY, and
XL REINSURANCE AMERICA, INC.,

               Defendant.
_____/

**ORDER**

This cause comes before the Court pursuant to J.C. Gibson Plastering Co., Inc.'s Dispositive Motion to Dismiss Defendants' Counterclaim or, in the Alternative, Motion for Summary Judgment on Defendants' Counterclaim (Doc. # 28), filed on October 16, 2007. XL Specialty Insurance Company and XL Reinsurance America, Inc., (collectively referred to herein as "XL") jointly filed a response on November 6, 2007.  (Doc. # 32.)  For the reasons that follow, Gibson's motion is denied.

I.   **Background**

This litigation arises out of Gibson's work as a subcontractor on a housing development project.  The Auchter Company was the general contractor.  XL as surety issued a payment bond insuring payment to subcontractors in the event Auchter failed to pay (see Doc. # 1-3), and a performance bond insuring completion of the project, correction of any defective work on the project, and

1

compensation for delays (Doc. # 32, at 2).  Gibson alleges that Auchter failed to pay amounts due, and Gibson filed the current lawsuit to recover those amounts from XL under the payment bond.

Gibson submitted its final billing to Auchter on January 9, 2007.  (Doc. # 5, at 2.)  Auchter did not pay, and Gibson sent XL a claim under the payment bond for $736,416.66.  (Doc. # 1-4.) Gibson sent its claim on February 9, 2007.  (Doc. # 1-4.)  XL received the claim on February 16, 2007.  (Doc. # 26, at 15 & n.7 (explaining that there is no genuine dispute but that XL received the notice on February 16).)  The bond required XL to respond to such a claim within forty-five days, but XL failed to respond as required by the bond.  The Court determined that XL's failure to respond barred it from thereafter challenging Gibson's claim for payment under the bond.  Accordingly, the Court granted summary judgment on Gibson's claim for payment under the bond.  (Doc. # 26, at 25.)

But the Court's order granting summary judgment did not resolve this case.  XL filed three counterclaims against Gibson. Each counterclaim alleges that Gibson failed to pay its sub-subcontractors and suppliers, failed to complete its work on time, and performed defective work.  (Doc. # 21.)  XL claims that Gibson's failures damaged Auchter, and that XL can enforce Auchter's rights for three reasons.  In count one, XL claims that Auchter assigned its rights to XL.  (Doc. # 21, at 8.)  In count

two, XL claims that it can enforce Auchter's rights under the doctrine of equitable subrogation. (Doc. # 21, at 9-10.) In count three, XL claims it can pursue Auchter's rights under the common law doctrine of indemnity. (Doc. # 21, at 10.) The Court's order granting summary judgment in favor of Gibson on its claim left XL's counterclaims pending.

Gibson addressed these counterclaims by filing its current motion, which seeks either dismissal of XL's counterclaims or summary judgment. Gibson argues primarily that XL's counterclaims represent simply a challenge to Gibson's claim for payment under the payment bond. (Doc. # 28, at 3-4.) Such a challenge, Gibson explains, is forestalled by the Court's order granting summary judgment. (Doc. # 28, at 4.) Secondarily, Gibson argues that XL has failed to state a claim for common law indemnity. (Doc. # 28, at 13-16.)

XL responds by arguing that the Court's summary judgment order only prevented XL from challenging Gibson's claim; the order did not prevent XL from pursuing affirmative claims. (Doc. # 32, at 7.) Moreover, even if XL's own claims would be barred as mere challenges to Gibson's claims, XL's counterclaims are not barred because they are assertions of <u>Auchter's</u> rights. (Doc. # 32, at 9.) XL points to the absence of any requirement in the contract between Gibson and Auchter that Auchter dispute Gibson's claim for payment within forty-five days. (Doc. # 32, at 9.) Additionally,

3

XL submits it should not be barred from either challenging Gibson's claim or bringing affirmative claims based on problems with Gibson's work that did not manifest themselves until after the forty-five-day response period had run.[1]  (Doc. # 32, at 7-8.)

---

[1]XL also expresses disagreement with the Court's summary judgment order.  XL takes exception to the Court's conclusion that, by failing to respond to Gibson's notice of claim within forty-five days, XL waived its right to thereafter challenge the claim.  XL explains that Paragraph 6.1 of the payment bond was not a promise by XL to respond to claims within forty-five days, but rather was a condition precedent to Gibson's right to sue on the bond. Instead of requiring XL to answer claims within forty-five days, the provision simply prevented claimants from suing within forty-five days.  In other words, Paragraph 6.1 was meant as a benefit to XL and a burden to claimants under the bond.  XL's claims manager affies that this was the intended meaning of Paragraph 6.1.  (Doc. # 32-2, at 4.)  If so, XL chose very strange language indeed. Paragraph 6 of the bond reads:

> When the Claimant has satisfied the conditions of Paragraph 4 [stating requirements for providing notice of claim], the Surety shall promptly and at the Surety's expense take the following actions:
>
>> 6.1. Send an answer to the Claimant, with a copy to the Owner, within 45 days after receipt of the claim, stating the amounts that are undisputed and the basis for challenging any amounts that are disputed.
>>
>> 6.2 Pay or arrange for payment of any undisputed amounts.

(Doc. # 1-3, at 2.)  Despite XL's asserted subjective intent that this language created a limitation on a claimant's right to sue under the bond, it is clear that this language represented a promise made by XL to answer claims "within 45 days . . . , stating the amounts that are undisputed and the basis for challenging any amounts that are disputed."  XL's breach of that promise effected a waiver of XL's right to thereafter dispute Gibson's claim, under the persuasive line of authorities examined by the Court in its summary judgment order.

## II.  Standard of Decision

On a motion to dismiss, a district court must accept as true all the allegations in the complaint or counterclaim and construe them in the light most favorable to the claimant.  Jackson v. Bellsouth Telecomms., 372 F.3d 1250, 1262 (11th Cir. 2004).  A court must favor the claimant with all reasonable inferences from the allegations.  Stephens v. Dep't of Health & Human Servs., 901 F.2d 1571, 1573 (11th Cir. 1990) ("On a motion to dismiss, the facts stated in [the] complaint and all reasonable inferences therefrom are taken as true.").

To survive a motion to dismiss, a complaint or counterclaim must contain material addressed to each material element "necessary to sustain a recovery under some viable legal theory."  Roe v. Aware Woman Ctr. for Choice, Inc., 253 F.3d 678, 684 (11th Cir. 2001).  This material can be either direct or inferential, id. at

---

Additionally, XL expresses concern that the Court's summary judgment order "requires recognition of Gibson's $736,416 claim even though it is not substantiated in any way and, at least arguably, could be absolutely fictitious."  (Doc. # 32, at 13.) XL's concern that the Court's order "essentially gives Gibson a judgment against XL for $736,416 simply because XL did not write a letter . . . within a certain time period" (Doc. # 32, at 13) overlooks the fact that XL bound itself to write such a letter within a certain time period if Gibson made a claim.  Had XL believed Gibson was a complete stranger to the bond, and therefore not a beneficiary of Paragraph 6, XL could have defeated summary judgment on that ground.  The Court did not essentially give Gibson a judgment simply because XL did not write a letter within forty-five days.  The Court granted summary judgment because XL failed to perform an obligation owed to Gibson under the bond, and thereby waived its right to dispute Gibson's claim.

683, but it must be factual, see Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1965 (2007); Jackson v. Bellsouth Telecomms., 372 F.3d 1250, 1262–63 (11th Cir. 2004). Thus, "[c]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." Jackson, 372 F.3d at 1262–63 (quoting Oxfort Asset Mgmt., Ltd. v. Jaharis, 297 F.3d 1182, 1188 (11th Cir. 2002)) (internal quotation marks omitted); accord Twombly, 127 S. Ct. at 1965 ("a formulaic recitation of the elements of a cause of action will not do . . . .").

A complaint or counterclaim need not state detailed factual allegations, but it must contain sufficient factual material to raise a right to relief above the speculative level. Twombly, 127 S. Ct. at 1965.  To raise a right to relief beyond the speculative level, a complaint or counterclaim must contain "enough factual matter (taken as true) to suggest" each material element of a claim. See Watts v. Florida Int'l Univ., 495 F.3d 1289, 1295 (11th Cir. 2007) (quoting Twombly 127 S. Ct. at 1965) (internal quotation marks omitted).  This requirement "calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of" the elements.  Id. (quoting Twombly 127 S. Ct. at 1965) (internal quotation marks omitted).  Thus, a complaint or counterclaim must state factual allegations that are not merely consistent with the material elements of a claim, but rather, that plausibly suggest the elements. Twombly, 127 S. Ct. at 1966.

6

In short, then, the Court must evaluate a complaint or counterclaim on two dimensions to determine whether it states a claim. First, the Court must determine whether the claim addresses all the material elements necessary to recovery under some legal theory. Second, the Court must determine whether the claim addresses these elements with factual material sufficient to raise a right to relief beyond mere speculation. In making these determinations, the Court must accept all allegations as true, view them in the light most favorable to the claimant, and draw all reasonable inferences therefrom.

The standard is different on a motion for summary judgment. The Court should render summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of showing the court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. Hickson Corp. v. N. Crossarm Co., Inc., 357 F.3d 1256, 1260 (11th Cir. 2004) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). "When a moving party has discharged its burden, the non-moving party must then 'go beyond the pleadings,' and by its own affidavits, or by 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is

a genuine issue for trial." <u>Jeffery v. Sarasota White Sox, Inc.</u>, 64 F.3d 590, 593-94 (11th Cir. 1995) (citing <u>Celotex</u>, 477 U.S. at 324).

If there is a conflict between the parties' allegations or evidence, the non-moving party's evidence is presumed to be true and all reasonable inferences must be drawn in the non-moving party's favor. <u>Shotz v. City of Plantation, Fla.</u>, 344 F.3d 1161, 1164 (11th Cir. 2003). "If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, the court should not grant summary judgment." <u>Samples ex rel. Samples v. City of Atlanta</u>, 846 F.2d 1328, 1330 (11th Cir. 1988) (citing <u>Augusta Iron & Steel Works, Inc. v. Employers Ins. of Wausau</u>, 835 F.2d 855, 856 (11th Cir. 1988)).

## III. Discussion

In this case, Gibson argues that XL's claim for common law indemnity fails to state a claim. The Court evaluates that argument under the standard for a motion to dismiss.[2] Gibson's primary argument, however, is not a facial attack on the sufficiency of XL's counterclaims. Instead, this argument relies

---

[2]Gibson's motion to dismiss was filed after its reply to XL's counterclaim. Consequently, Gibson's motion should have been styled a motion for judgment on the pleadings under Rule 12(c). <u>See</u> <u>Nat'l Ass'n of Pharm. Mfrs., Inc. v. Ayerst Labs.</u>, 850 F.2d 904, 909 n.2 (2d Cir. 1988). The Court applies the same standard, though, whether the motion seeks dismissal or judgment on the pleadings. <u>Id.</u>

on matters outside the pleadings.  Accordingly, the Court employs the summary judgment standard in deciding whether XL's failure to answer Gibson's claim as required by the payment bond bars XL's counterclaims.  See Bost v. Federal Express Corp., 372 F.3d 1233, 1237 (11th Cir. 2004) (explaining that court must treat motion to dismiss as motion for summary judgment if parties and court rely on documents outside the pleadings).  The Court first addresses Gibson's facial challenge to XL's common law indemnity counterclaim.  Next, the Court turns to Gibson's primary argument.

**A.   XL States a Claim for Common Law Indemnity**

Under Florida law, a claim for common law indemnity involves two elements.  First, the indemnitee must be "vicariously, constructively, derivatively, or technically liable for the wrongful acts of the" indemnitor.  Houdaille Indus., Inc. v. Edwards, 374 So. 2d 490, 492 (Fla. 1979).  Second, the indemnitee must be entirely without fault in causing the loss.  Id. at 494.

Gibson attacks XL's common law indemnity claim on both fronts. Gibson explains that XL cannot state a claim because there was no relationship between itself and XL that would make XL liable for Gibson's wrongdoing.  (Doc. # 28, at 14.)  This ignores XL's position as surety on the performance bond and the payment bond. XL alleges that Gibson performed defective or non-conforming work, for whose remediation XL is liable under the performance bond. (See Doc. # 21, at 10.)  Additionally, XL alleges that Gibson

9

failed to pay its sub-subcontractors, whom XL was forced to pay under the payment bond. (<u>See</u> Doc. # 21, at 8, 10–11.) Thus, XL has alleged that it is vicariously, constructively, derivatively, or technically liable for certain of Gibson's acts.

Gibson also submits that XL was not entirely without fault because XL was blameworthy in failing to answer Gibson's claim under the payment bond within forty-five days. Though clever, this argument is unpersuasive. The second element of an indemnity claim does not require perfect blamelessness. Instead, it merely requires that the indemnitee be without fault <u>in causing the loss the indemnitee was required to bear</u>. <u>See</u> <u>Houdaille Indus.</u>, 374 So. 2d at 492–93 (describing indemnity as a doctrine applicable to situations where the indemnitee has been forced to pay a loss occasioned not by itself but by another). Thus, it is irrelevant whether the indemnitee may be blameworthy in its other dealings with the indemnitor. The question is only whether the indemnitee had a hand in causing the loss at issue.

In its indemnity claim, XL identifies two such categories of losses. The first is the losses for which XL is liable on the performance bond. XL alleges that Gibson's work on the housing development was "incomplete, defective, and . . . failed to conform with the Subcontract and the Project specifications." (Doc. # 21, at 8.) Under the performance bond, XL is liable for these losses. (Doc. # 21, at 10.) There is no suggestion that XL is in any way

at fault for causing these losses, and the natural inference from XL's allegations is that XL was entirely without fault in causing the losses.[3]

The second category represents losses for which XL is liable on the payment bond.  XL alleges that Gibson failed to pay its sub-subcontractors, with the result that XL was required to pay them under the payment bond.  (Doc. # 21, at 8.)  While it is possible XL in fact shares some of the blame for Gibson's failure to pay sub-subcontractors,[4] that question is not presented by Gibson's argument that XL fails to state a claim.  Accordingly, XL's counterclaim sufficiently states a claim for common law indemnity.

**B.    XL's Counterclaims Are Barred, But Only Inasmuch as they Were Available as Bases for Challenging Gibson's Initial Claim**

Gibson argues that XL's counterclaims are merely challenges to Gibson's claim under the payment bond.  As such, Gibson explains, the counterclaims are foreclosed by the Court's order granting

---

[3]Gibson argues that XL failed to state that it was wholly without fault or that Gibson was wholly at fault.  (Doc. # 28, at 13.)  XL may have failed to state this explicitly, but XL's counterclaim contains sufficient material to support the inference that Gibson was at fault and XL was not.  In short, XL alleged it was the surety on a performance bond, that the subcontractor failed to do its work right, and that XL was liable under the performance bond to correct the faulty work.  These allegations eminently support the inference that XL was not to blame for the faulty work and that Gibson was.

[4]For example XL may share some of this blame if its delay in settling Gibson's claim under the payment bond left Gibson without sufficient funds to pay its own sub-subcontractors.

11

summary judgment on Gibson's claim.  XL disagrees, submitting that the Court's summary judgment order barred only defenses against Gibson's claim, not affirmative claims against Gibson. Additionally, XL argues that Auchter's claims against Gibson are not barred.  Thus, XL posits, even if XL's <u>own</u> affirmative claims are barred, XL is not barred from asserting Auchter's claims.

It seems there is no Florida authority on this issue.  As a result, the Court is called upon to articulate Florida's policy the way it appears this state's Supreme Court would.  <u>Three Palms Pointe, Inc. v. State Farm Fire & Cas. Co.</u>, 362 F.3d 1317, 1318 (11th Cir. 2004).  This Court is of the opinion that the Florida Supreme Court would bar the counterclaims to the extent they are based on facts that XL could reasonably have identified as a basis for challenging Gibson's claim during the forty-five day period following XL's receipt of Gibson's claim.

In its summary judgment order, this Court opined that the Florida Supreme Court would follow the rule announced in <u>National Union Fire Insurance Co. v. Bramble</u>, 879 A.2d 101 (Md. 2005). (Doc. # 26, at 24.)  The Maryland high court in that case examined a bond provision identical to the payment bond provision at issue in this case.  <u>Bramble</u>, 879 A.2d at 209.  The court interpreted that provision as requiring the sureties to respond to claims within forty-five days.  <u>Id.</u>  After a thorough analysis, the <u>Bramble</u> court concluded that the sureties' failure properly and

timely to respond rendered "the entirety of the claim . . . undisputed" and required the sureties promptly to pay the claims. <u>Id.</u> at 213.

This result must be the same whether the procedural mechanism used to dispute the claim is a "defense" or a "counterclaim." It would be an unjustified elevation of form over substance to allow XL to raise the same facts in a counterclaim as the Court prohibited XL from raising in a defense.[5]  Indeed, a counterclaim for nonconforming or defective work by a subcontractor is part of a "classic defense" to the subcontractor's claim under a payment bond.  <u>C.A. Oakes Constr. Co., Inc. v. Ajax Paving Indus., Inc.</u>, 652 So. 2d 914, 916 (Fla. 2d DCA 1995).  In such cases, the <u>Bramble</u> rule would have no force if counterclaims were allowed but defenses barred.  Having failed to answer a claim as required by the payment bond, a surety could avoid the <u>Bramble</u> rule simply by recasting its defenses to the bond claim as a counterclaim.  This Court believes the Florida Supreme Court would not approve such a result.

XL focuses on the distinction between pursuing its own claims and pursuing Auchter's claims.  Even if XL is barred from asserting counterclaims to enforce its <u>own</u> rights, XL argues that it should

---

[5]The substantive similarity between a defense and a counterclaim is given recognition in Federal Rule of Civil Procedure 8(c)(2): "If a party mistakenly designates a defense as a counterclaim, or a counterclaim as a defense, the court must, if justice requires, treat the pleading as though it were correctly designated . . . ."  Fed. R. Civ. P. 8(c)(2).

still be allowed to maintain counterclaims asserting <u>Auchter's</u>
rights.  There is no justification for such a rule.  A payment bond
surety's rights in defending against a subcontractor's claim are
generally derivative of the general contractor's rights.  <u>See</u> <u>Team</u>
<u>Land Dev., Inc. v. Anzac Contractors, Inc.</u>, 811 So. 2d 698, 700
(Fla. 3d DCA 2002) ("Generally, a surety is afforded any defenses
available to the contractor."); <u>C.A. Oakes Constr. Co.</u>, 652 So. 2d
at 915 (suggesting that counterclaim derived from general
contractor was only effective way surety could defend itself
against subcontractor's claim).  Because a surety can ordinarily
raise the general contractor's rights, XL's proposal would
effectively eviscerate the <u>Bramble</u> rule.  This Court believes the
Florida Supreme Court would not accept such a result.

    However, this Court cannot enter summary judgment for Gibson
on XL's counterclaims inasmuch as the counterclaims are based on
facts not reasonably identifiable within forty-five days of XL's
receipt of Gibson's notice of claim.  Paragraph 6.1 of the payment
bond required XL to answer claims within forty-five days "stating
the amounts that are undisputed and the basis for challenging any
amounts that are disputed." (Doc. # 1-3, at 2.)  Gibson does not
argue that this provision was intended to cut off any rights XL
might have based on facts not reasonably identifiable within forty-
five days.  Indeed, Gibson argues that XL could have asserted its
claims within that period.  (Doc. # 28, at 8.)  Thus, Gibson

appears to acknowledge that Paragraph 6.1 required XL to raise only those facts reasonably identifiable within forty-five days of Gibson's claim.  Such an interpretation is consistent with Florida law, which provides that "[c]ontracts should receive a construction that is reasonable, practicable, sensible, and just." 7-Eleven, Inc. v. Stin, L.L.C., 961 So. 2d 977, 980 (Fla. 4th DCA 2007). Accordingly, XL can maintain its counterclaims to the extent that they are founded on facts not reasonably identifiable within forty-five days of XL's receipt of Gibson's claim.

To merit summary judgment, then, Gibson bore the initial burden of showing the Court, by reference to materials on file, that there is no genuine question of fact but that XL's counterclaims are founded entirely on facts reasonably available within forty-five days of XL's receipt of Gibson's claim. See Hickson Corp. v. N. Crossarm Co., Inc., 357 F.3d 1256, 1260 (11th Cir. 2004).  Gibson attempted to carry this burden by directing the Court to a letter from Auchter's counsel dated March 30, 2007. (Doc. # 28, at 10.)  This letter stated that Gibson's work was not timely, but it did not state that Gibson's work was defective. (Doc. # 8-3, at 28-30.)  XL's counterclaims include allegations that Gibson's work was incomplete, defective, and non-conforming. (Doc. # 21, at 8.)  Thus, the materials Gibson referenced do not show that there is no genuine question but that XL's counterclaims are founded entirely on facts reasonably available within forty-

five days of XL's receipt of Gibson's claim.    Moreover, XL has filed an affidavit of its claims manager stating that "some of the issues with Gibson's defective work did not even manifest or become apparent within 45 days . . . ."  (Doc. # 32-2, at 6.)  The Court must deny summary judgment because Gibson has not carried its initial burden.

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED:**

J.C. Gibson Plastering Co., Inc.'s Dispositive Motion to Dismiss Defendants' Counterclaim or, in the Alternative, Motion for Summary Judgment on Defendants' Counterclaim (Doc. # 28), is DENIED.

**DONE** and **ORDERED** in Chambers in Jacksonville, Florida, this 2nd day of May 2008.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies: All Counsel of Record